IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:24-cr-058-HEH |
| | ) | |
| JARON JAMES STARKEY, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING POSITION OF THE UNITED STATES AND RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR A DOWNWARD VARIANCE AND MOTION FOR A DOWNWARD DEPARTURE**

The United States of America, through its attorneys, Jessica D. Aber, United States Attorney, and Angela Mastandrea, Assistant United States Attorney, hereby submits its position with respect to the sentencing of defendant Jaron James Starkey, who entered a plea of guilty to a single count criminal Information (without a plea agreement, but with an agreed upon Statement of Facts), charging him with possession with the intent to distribute 100 grams or more of a mixture and substance containing Parafluorofentanyl (pFF), a fentanyl analogue and Schedule I controlled substance; and fentanyl, a Schedule II controlled substance. The defendant was arrested while in possession of 4,497 blue glassine[1] bags that contained 122 grams of Parafluorofentanyl, and 120 white glassine bags that contained fentanyl. The charge set forth in the criminal Information carries a mandatory minimum term of 10 years' incarceration, and a maximum term of imprisonment for life, at least five years of supervised release, and a $100.00 mandatory special assessment. There is no restitution or forfeiture in this case. In addition, the United States files its response in opposition to defendant's motions for a downward variance

---

[1] Glassine bags are similar to bags made of wax paper or parchment paper.

1

and departure.

The United States has no objections, corrections, or amendments to the Presentence Report as prepared and filed in this case (Docket 21 and 24). The defendant qualifies for a sentence enhancement pursuant to the Career Offender provisions of the United States Sentencing Guidelines, § 4B1.1. This results in an Offense Level of 37 (less 3 points for acceptance of responsibility reduces the Offense Level to 34), and a Criminal History Category of VI, resulting in an advisory guideline range of 262 to 327 months. The defendant has 18 countable criminal history points (See PSR at p. 19, ¶ 47), which exceeds the 13 points that are needed for Criminal History Category VI.[2] By the age of 34, this defendant has amassed 21 adult convictions (see chart *infra*, and PSR at pp. 9-19), and was assessed *zero* criminal history points for eight of his adult convictions (as well as zero criminal history points assessed for his four prior juvenile adjudications).

Based on the factors set forth in 18 U.S.C. § 3553(a), specifically, the need to protect the public, the need to promote respect for the law, the need to reflect the seriousness of the charged offense, the need to provide adequate deterrence, and the need to avoid unwarranted sentencing disparities, the United States respectfully asks this Court to impose a sentence that falls within the Career Offender guideline range of 262 to 327 months' incarceration, followed by a term of at least five years of supervised release. In support of this recommendation, the United States offers the following.

---

2 Even if this Court were to exclude the 3 points defendant was assessed for his two marijuana convictions (as his counsel urges this Court to do), the defendant would still have 15 countable criminal history points, and therefore would still be in Criminal History Category VI.

**Factual and Procedural Background**

As set forth in the Statement of Facts, the defendant was arrested on September 17, 2023, in the Eastern District of Virginia after he was observed driving erratically on I-95 in Caroline County. Virginia State Police responded and observed that a red Jeep with North Carolina license plates had crashed, sustaining heavy damage. The defendant was the only person in the car, and he appeared to be under the influence of drugs or alcohol. As a result, he was taken to the hospital. The responding Trooper observed in plain view thousands of blue and white glassine baggies containing a white powder that were scattered throughout the Jeep. A total of 4,497 blue glassine bags were collected which were found to contain 122.2312 grams of Parafluorofentanyl, and 120 white glassine bags were collected which contained fentanyl. In a post-*Miranda* statement, the defendant advised that he had traveled from Charlotte, North Carolina to Wilmington, Delaware where he purchased the drugs for distribution. On July 15, 2024, a single-count criminal Information was filed charging the defendant with possession with the intent to distribute 100 grams or more of Parafluorofentanyl (pFF), a Schedule I controlled substance, and Fentanyl, a Schedule II controlled substance, on or about September 17, 2023, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). The defendant pled guilty on July 17, 2024, with an agreed upon Statement of Facts, but without a Plea Agreement. Sentencing has been scheduled for December 6, 2024, at 9:30 am.

**Position on Sentencing**

Based on the nature and seriousness of the offense that brings the defendant before this Court, as well as the history and characteristics of the defendant, the need to protect the public, the need to promote respect for the law, the need to avoid unwarranted sentencing disparities,

and the need to provide general and specific deterrence, the United States respectfully recommends to this Court the imposition of a sentence within the Career Offender advisory guideline range of 262 to 327 months. This is based on an Offense Level of 34 (after three levels are reduced for acceptance of responsibility) and a Criminal History Category of VI. The parties agree that the Career Offender guidelines apply in this case.

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (*quoting United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination:

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (*quoting* 18 U.S.C. § 3553(a)).

A.   **Nature and Circumstances of the Offense**

In this case, the defendant was in possession of 4,497 glassine bags containing over 120 grams of Parafluorofentanyl (pFF), a Schedule I controlled substance, and 120 glassine bags containing Fentanyl, a Schedule II controlled substance. The defendant is 34 years old, and the charge that brings him before this Court represents his twenty-second arrest and conviction as

4

an adult.

In support of his motion for a downward variance, the defendant argues that Parafluorofentanyl is not as dangerous as Fentanyl, the latter of which carries a lower guideline range for the same quantity. First, recent studies conducted by both the Centers for Disease Control (CDC) and the Michigan Department of Health and Human Services, do not support this claim.

The Michigan DHHS study found that after nearly four decades of obscurity, a fentanyl analog never intended for human use is once again appearing in the illicit drug market in the United States. Para-fluorofentanyl (pFF) is an illicit synthetic opioid that was classified as a Schedule 1 drug in 1986. The brief describes an emerging drug trend—a sharp increase in decedents testing positive for pFF in Michigan, identified via the Swift Toxicology of Overdose-Related Mortalities (STORM) program. As of October 2022, STORM has detected 284 pFF-positive deaths, 72% of which occurred in the one-year time period between November 2021 to October 2022. The study goes on to report that "clinical research evidence indicates pFF is **more potent** than fentanyl, which is approximately 50 to 100 times more potent than morphine." And that, "pFF has recently reemerged in the illicit drug market. It has been detected in heroin packets and counterfeit pills. It has also been linked to multiple overdose deaths across several U.S. states. The potency of pFF can vary between different drug supplies due to the nature of the unregulated, clandestine chemical manufacturing process. This narrows the safety threshold and misleads users, placing them at increased risk of opioid toxicity. Signs and symptoms associated with pFF overdose are like other opioid analgesics, including pinpoint pupils, central nervous and respiratory system depression, cyanosis, and coma.

And the Centers for Disease control has reported the following: *Para*-fluorofentanyl was involved in 1,658 overdose deaths reported by 43 jurisdictions during July 2020–June 2021. *Para*-fluorofentanyl–involved deaths increased from the first reported occurrences in September 2020 (five deaths) through a peak of 293 deaths in May 2021. The number of *para*-fluorofentanyl–involved deaths increased 455.3% from 253 during July–December 2020 to 1,405 during January–June 2021. Deaths involving *para*-fluorofentanyl occurred in 35 jurisdictions in the Northeast, South, Midwest, and West U.S. Census Bureau regions, respectively. Six states (Illinois, Maryland, Michigan, New Jersey, Pennsylvania, and Tennessee) reported more than 100 deaths involving *para*-fluorofentanyl.

Clearly, the Parafluorofentanyl and Fentanyl that this defendant possessed with the intent to distribute, are powerful and deadly controlled substances that have led to ever-increasing incidents of overdoses and deaths.

The defendant has characterized himself in his sentencing position as a "courier" but there is no evidence that he was transporting these drugs for someone else. In addition, he argues that he is not a "kingpin" in the drug trafficking world. But the defendant was not assessed criminal history points for being a leader or organizer of a large-scale drug trafficking organization, nor were there any suggestions that a sentence that fell above the advisory guideline range would be appropriate based on his role in the offense. Notwithstanding that, the sheer quantity and type of narcotics this defendant possessed with the intent to distribute are extremely dangerous and have led to an ever-increasing number of overdoses and deaths. To downplay that fact in an effort to avoid a Career Offender guideline sentence simply mischaracterizes what occurred in this case.

Second, even if 100 grams of Parafluorofentanyl (a fentanyl analogue), which is a Schedule I controlled substance, was treated in the same way as if the defendant possessed 40 grams of Fentanyl, a Schedule II controlled substance, the defendant nonetheless still qualifies for a sentence enhancement under the Career Offender provisions of the guidelines, and under the Federal Criminal Code, his advisory guideline range (based on a mandatory minimum of 5 years to a maximum of 40 years for 40 grams of fentanyl) would result in a guideline range of 188 to 235 (as opposed to 262 to 327 months for a sentence that carries a mandatory minimum of 10 years to life). See Career Offender Guidelines, § 4B.1. However, the defendant is asking this Court to overlook the fact that the defendant has an extensive criminal history and qualifies for a sentence under the Career Offender provisions of the guidelines.

**B.      History and Characteristics of the Defendant**

The defendant, who is now 34 years old, was born in Wilmington, Delaware. His first interaction with the law occurred when he was 16 years old and was in possession of a Schedule I controlled substance. Specifically, the defendant had 8 plastic bags which tested positive for heroin. Prior to his arrest, officers had observed the defendant and another individual (who was found in possession of four plastic bags which tested positive for heroin) circling the area. The defendant was originally charged with possession with the intent to distribute a controlled substance, but that charge was reduced to possession of a Schedule I controlled substance. Thus began the defendant's series of four adjudications and 21 adult convictions. The following year, when he was 17 years old, the defendant was charged with resisting arrest. The following month he and two of his friends were arrested after an individual was assaulted and robbed. He was charged in that case with conspiracy to engage

in felony criminal conduct and was adjudicated delinquent and ordered to undergo intensive supervision. None of these four adjudications received criminal history points, and none of these encounters with the law, or the leniency he received, served to deter the defendant from engaging in further criminal conduct.

**Adult Criminal Convictions**:

The following chart summarizes the defendant's adult criminal convictions, his probation violations, and the criminal history points he was assessed. Undersigned counsel will highlight some of the more egregious crimes following this summary.

| Age | Conviction | Sentence | Points Assessed |
| --- | --- | --- | --- |
| 18 | Criminal Contempt | Probation | 0 |
| 18 | Felony Criminal conspiracy to Engage in Burglary | 11 months, 1 day to 1 year, 11 months | 0 |
| 19 | Possession of MJ | 6 months suspended for 1 year | 0 |
| 19 | Resisting Arrest | Fine | 0 |
| 21 | Driving without a license | Fine | 0 |
| 21 | **Possession with Intent to Distribute Schedule II Controlled Substance*** | 4 years | 3 |
| | **Possession of a Firearm by a Prohibited Person*** | 1 year suspended | |

|  | | | |
|---|---|---|---|
|  | Probation Violation 2012 | Sentenced to 3 years suspended after 90 days |  |
|  | Probation Violation 2014 | Sentenced to 2 years 9 months suspended for six months |  |
|  | Probation Violation 2014 | Sentenced to 1 years suspended for one year |  |
|  | Probation Violation 2014 | Sentenced to 1 year suspended for one year |  |
| 24 | Driving Under the Influence of Alcohol or Drugs<br><br>Probation Violation 2016<br>Probation Violation 2017<br>Probation Violation 2017 | 1 year suspended, 1 year probation | 1 |
| 25 | Driving w/o a License | Fine | 0 |
| 26 | Possession of MJ | Fine | 1 |
| 28 | Reckless Driving Alcohol/Drug Related<br>Probation Violation 2019 | 30 days suspended | 1 |
| 28 | Reckless Driving Alcohol/Drug Related<br>Probation Violation 2019 | 30 days suspended | 1 |
| 28 | Possession of a Controlled Dangerous Substance (not MJ) | 90 days suspended<br>Bench Warrant issued for failure to appear 3 times | 1 |

| 28 | Failure to Reinstate License | Fine | 0 |
| --- | --- | --- | --- |
| 28 | Driving Under the Influence of Drugs | 18 months suspended after 60 days Sentenced to one year 2 months May 2019 | 2 |
| 28 | Driving Under the Influence of Drugs, 3rd Offense Probation Violation 2021 | 2 years suspended after 1 year | 2 |
| 29 | **Manufacture, Deliver, Possess with the Intent to Deliver a Controlled Substance\*** Probation Violation | 8 years suspended after 6 months<br><br>7 years 6 months suspended after 6 months of intensive supervision | 2 |
| 31 | Failure to Reinstate License | Fine | 0 |
| 32 | Possession of MJ more than ½ ounce, less than 1-½ ounces | 120 days | 2 |
| 32 | Reckless Driving Alcohol or Drug Related | 30 days | 1 |
| 32 | Driving Under Influence of Drugs 4th Offense | 5 years suspended | 2 |

With regard to his first conviction that qualifies for a sentence enhancement under the Career Offender provisions of the guidelines (set forth in the PSR at pp. 10-12, ¶ 30), on June 7, 2011, the defendant removed his ex-girlfriend's laptop from her apartment, punched out the window of her vehicle, and punched *her* in the face. At the time of his arrest, he was in possession of 69 grams of Phencyclidine (PCP), as well as two firearms. The quantity of PCP he possessed is significant, and is inconsistent with personal use, and consistent with the intent to distribute (which is reflected in the charge that he pled guilty to). These convictions were followed not one, not two, not by three, but by *four* separate probation violations, demonstrating this defendant's failure to comply with the law or follow the orders of the Court. It is significant that he has had numerous additional probation violations in addition to these four.

His second conviction that qualifies under the Career Offender provisions of the Guidelines is set forth in the PSR at pp. 17-18, paragraph 40. On November 30, 2018, an arrangement was made with the defendant to sell two bundles of cocaine, with each bundle containing 13 individual knotted bags containing cocaine (for a total of 26 bags) to an individual (who turned out to be an undercover officer). The defendant arrived at the predetermined location and was arrested while in possession of a distribution quantity of cocaine on his person. The defendant had two additional probation violations associated with this case, one in August and one in September 2021.

This defendant's overall record shows a pattern of complete disregard for the law, for orders of the Court, and for the safety and well-being of others. A sentence within the Career Offender advisory guideline range is necessary in this case to adequately reflect the history

and characteristics of this defendant, and to protect the public from the defendant's future crimes.

**C.     A Guideline Sentence Serves the Factors of § 3553**

1. Seriousness of the Offense; Provide Adequate Punishment

These factors support the imposition of a sentence of 262 to 327 months. The defendant must be held accountable for possessing with the intent to distribute more than 100 grams of parafluorofentanyl and fentanyl. As the PSR and Statement of Facts note, the defendant possessed just shy of 4,500 glassine bags (i.e. dosage units) that contained Parafluorofentanyl. Any suggestion that he was "just" a courier is inconsistent with the Statement of Facts, which shows that the defendant advised law enforcement in a post-*Miranda* statement that he had traveled from North Carolina to Wilmington, Delaware where he purchased the drugs for distribution. See Statement of Facts, PSR at p. 4, ¶ 8.

2. <u>Need to Deter Future Criminal Conduct</u>

By the age of 34, the defendant has 21 adult convictions. That is, in the 16 years that transpired between age 18 and 34, on average he has been convicted of a crime every single year, and at times, he was convicted of two or more crimes in a given year. This does not count the numerous probation violations. Rather than taking the leniency he was shown by the state court judges to turn his life around, he instead escalated his criminal activity. He went from possessing 8 packets of heroin as a juvenile, to 69 grams (690 dosage units at 1/10 of a gram) of PCP (to include punching his ex-girlfriend in the face and possessing two firearms), to possessing with the intent to distribute cocaine to an undercover officer, to possessing more than 120 grams of Parafluorofentanyl and fentanyl. Not a single sentence has ever served to deter this defendant from engaging in additional criminal conduct. And this conviction represents not only his third drug trafficking conviction but is the culmination of 22 arrests and convictions as an adult. A sentence of between 262 to 327 months' incarceration may be what this defendant needs to finally understand that he cannot deal drugs and commit crimes. The fact that he has so many probation violations suggests that he not only does not have any respect for the law or for orders of the Court, but further, that he fails to appreciate the consequences of his crimes. He has not demonstrated regret or remorse for his criminal activity until now – when he faces a federal sentence as a Career Offender. The criminal activity that has brought this defendant before the Court is extremely serious and calls for a significant sentence that may finally serve to deter him. In addition to specific and general deterrence, a sentence within the Career Offender guidelines is fully supported by each of the 3553(a) factors.

3. <u>Need to Protect the Public from Defendant's Future Criminal Conduct</u>

To be sure, this defendant has engaged in repetitive criminal conduct involving drug trafficking offenses, and firearms. Not one of his prior sentences has ever deterred him from engaging in similar criminal activity. At the very least, then, a sentence within the advisory guidelines under the Career Offender provisions is necessary to protect the public from the criminal activity that this defendant chose to engage in. This sentence may finally send the message that he cannot continue to traffic in dangerous drugs or commit crimes.

4. <u>Need to Provide Treatment to Defendant</u>

The defendant is clearly in need of drug treatment, and would benefit from mental health counseling, as well as educational and vocational training while incarcerated so that he may find gainful employment upon his release, and so that he will be able to transition back into society as a productive member.

5. <u>Need to Avoid Unwarranted Disparities</u>

This defendant has been engaged in criminal activity his entire adult life. Not one of his 21 prior convictions has stopped him from reoffending. Clearly, the prior sentences imposed and the supervision he received utterly failed to deter him from returning to criminal activity and drug trafficking. His crimes have escalated over time, from possessing 8 bags of heroin, to possessing with the intent to distribute 68 grams of PCP, to possessing with the intent to distribute 26 bags containing cocaine, to possessing with the intent to distribute 4,497 bags containing Parafluorofentanyl, and 120 bags containing fentanyl. His criminal record demonstrates that absent a significant sentence, he simply will not be deterred. The United States therefore asks this Court to impose a sentence within the advisory guideline range under the

Career Offender provisions of the United States Sentencing Guidelines, as such a sentence is necessary to adequately reflect the seriousness of this defendant's criminal activity. Such a sentence will also serve to avoid unwarranted disparities for similarly situated defendants.

**<u>Response in Opposition to Defendant's Motion for a Downward Variance</u>**

Although the defendant agrees that he qualifies as a Career Offender, he nonetheless asks this Court to simply ignore that fact, and reduce his sentence by 50%, as though he has no prior drug trafficking convictions at all.

In support of this motion, the defendant opines that Parafluorofentanyl is less harmful compared to fentanyl (see Def. Sentencing Pos. at 14). But, as already discussed supra, Parafluorofentanyl *is* more dangerous than Fentanyl, which has 50 to 100 times the potency of methadone. Thus, a person who ingests Parafluorofentanyl (even when mixed with other drugs), or ingests it believing that they are using heroin, may overdose or die because of the greater potency this drug has compared to heroin (and fentanyl). Further, in the past, standardized testing of fluids taken from overdose victims (who had died) could not detect Parafluorofentanyl, therefore the total number of overdose deaths that have resulted from ingesting Parafluorofentanyl may be higher than previously thought but cannot be quantified with precision. But testing has progressed, and medical examiners are able to detect this drug in the blood or fluids taken from a decedent. The statistics show that the number of people who died from Parafluorofentanyl has escalated year over year. And federal lawmakers have concluded that Parafluorofentanyl *is* more dangerous than fentanyl and should therefore expose a dealer to a more significant sentence than fentanyl. This defendant possessed 121 grams of Parafluorofentanyl, and Congress has determined that 100 grams or more falls within the

mandatory minimum term of incarceration of 10 years to a maximum term for life. As previously noted, even if Fentanyl and Parafluorofentanyl were treated in an identical manner in terms of mandatory minimum sentences, as a Career Offender the defendant would be facing a term of incarceration of 188 to 235 months.

Defendant also argues that the defendant should be granted a downward variance to between 130 to 162 months even though he possessed with the intent to distribute narcotics, arguing that he did so *because* he has a substance use disorder, and because he grew up in a "drug infested" home. He then notes that the drug infested home was not due to any fault of his mother or father, but rather it was because he was living in the home with a sister (who, as the PSR shows, is 14 years older than the defendant – see PSR at p. 23, ¶ 70) who has a substance use disorder. But this claim is not supported by any of the information in the PSR, or in the letters supplied to the Court by the defendant, his mother, his father, or his aunt. What is clear is that the defendant first consumed alcohol when he was in the sixth grade (assuming he was 12, his sister would have been 26 years old), and has smoked marijuana since he was 13 (his sister would have been 27 years old), and he misused prescription medication at age 18 (when his sister would have been 32 years old), and used ecstasy when he was 23 (but stopped when he was 24) when his sister would have been 37 and 38 years old. He states that he first used PCP when he was 16 (when his sister would have been 30 years old), and he last used it on the date of his arrest for the charge that now brings him before this Court (his sister is now 48 years old and lives in Massachusetts). In the letter of support written by the defendant's mother, she says that because she was watching his sister's four children, that the defendant may have felt abandoned by her. This is far different than a person turning to selling drugs because they were raised in a

16

"drug infested house." It appears, that due to the age difference, his sister was most likely no longer living with the defendant's family for at least part (if not all) of the time that the defendant was experimenting with drug use. That said, his substance use disorder suggests that the defendant will benefit from a drug and alcohol treatment program while incarcerated. But it does not support a sentence reduction that is 50% (or any percent) below the Career Offender advisory guideline range.

The defendant also claims that he was a "courier," but in his statement to law enforcement post-*Miranda*, he indicated that he had driven from North Carolina to Delaware to pick up the drugs he possessed, and that he was going to distribute them in North Carolina. This, coupled with the quantity of drugs he had in his possession, his prior drug trafficking convictions, and the fact that he has not worked in a year make it clear that he is in fact a drug dealer, and that how he earns his money. See PSR, p. 37, ¶ 107 in which the defendant stated that he has not been employed since September 2022 – one year prior to his arrest in the case that now brings him before this Court.

**Response in Opposition to Defendant's Motion for a Downward Departure**

The defendant also suggests that a downward departure is justified pursuant to U.S.S.G. §4A1.3(b)(1) because he has two prior convictions for marijuana possession and these convictions mean that his criminal history category is overrepresented. However, these two convictions do not have any effect on his Criminal History category (i.e., he remains in Criminal History Category VI whether he has 15 criminal history points or 18 criminal history points), and likewise, these two convictions have no effect on the defendant qualifying for a sentence enhancement under the Career Offender provisions of the guidelines.

U.S.S.G. § 4A1.3(b)(1) states:

If reliable information indicates that the defendant's criminal history category *substantially over-represents* the seriousness of the defendant's criminal history *or the likelihood that the defendant will commit other crimes*, a downward departure may be warranted.

The commentary then notes, as an example of a downward departure to a defendant's criminal history category, a circumstance where the defendant received criminal history points for possession of marijuana for personal use. The PSR at ¶ 33 certainly shows that he possessed marijuana, and the PSR at ¶ 44 shows that he possessed more than ½ an ounce but less than 1-½ ounces of marijuana. But, as noted, this defendant comes before the Court with 21 prior convictions. The three points that were assessed for his two marijuana convictions, if disregarded, does not alter his Criminal History category. In other words, he is in Criminal History Category VI whether he has 15 criminal history points or 18 criminal history points). Additionally, these two marijuana convictions have no impact whatsoever on the Career Offender provisions of the guidelines. Rather, the convictions that qualify under the Career Offender provisions are found at ¶¶ 30 and 40 of the PSR.

Second, the guidelines are clear that the standard for a downward departure under the provision cited by the defendant may apply in circumstances where a defendant's criminal history category substantially over-represents the defendant's criminal record or the likelihood that the defendant will commit other crimes. As noted, in the 16 years that he has been an adult, the defendant has been convicted of 21 separate crimes. Removing his two marijuana convictions (by, for example, simply ignoring them) means that he was convicted of 19 crimes within a 16-year time period, with the criminal activity that now brings him before this Court representing

18

his 20th (as opposed to his 22nd) conviction. Clearly, reliable information – the defendant's 19 prior convictions – which include: conspiring to engage in burglary; drug distribution (69 grams of PCP); illegal possession of multiple firearms; thirteen probation violations; possession with the intent to distribute cocaine; numerous convictions for driving under the influence of drugs, plus the serious drug trafficking crime that brings him before this Court, show that there is a likelihood that this defendant will continue to commit crimes absent the imposition of a significant sentence. Defendant's argument that a downward departure under this provision is warranted because of the two marijuana convictions on his record is simply unsupported by the facts and is wholly without merit.

**Conclusion**

For all the reasons set forth herein, the United States respectfully asks this Court to deny defendant's motion for a downward variance and his motion for a downward departure and impose a sentence that falls within the advisory guideline range pursuant to the Career Offender provisions of the United States Sentencing Guidelines, § 4B1.1, and specifically asks this Court to impose a sentence of between 262 to 327 months. This guideline range addresses each of the relevant factors set forth in 18 U.S.C. § 3553(a), including the seriousness of the offense, the history and characteristics of the defendant, the need for both specific and general deterrence, the need to promote respect for the law, the need to protect the public, and the need to avoid any unwarranted sentencing disparities. The United States also asks the Court to impose the $100.00 mandatory special assessment, and impose a term of at least five years of supervised release upon defendant's release from confinement.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY
/s/
Angela Mastandrea
VSB 51070
Assistant United States Attorney
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 771-2316
Email: Angela.Mastandrea@usdoj.gov