IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


THE UNITED STATES OF AMERICA,

                    plaintiff,

          versus                    3:24CR058

JARVON JAMES STARKEY,

                    defendant,




                    Sentencing

          before Honorable Henry E. Hudson
              Senior District Court Judge


                February 6, 2025

              Richmond, Virginia




                GILBERT F. HALASZ
              Official Court Reporter
                 U. S. Courthouse
                701 East Broad Street
                Richmond, VA 23219

APPEARANCES


Angela Mastandrea, Esq.

Assistant United States Attorney

for the United States




Carolyn V. Grady, Esq.

Assistant Public Defender

for the defendant

The defendant in his own proper person

1      THE COURT:  All right.

2      Call the next case.

3      THE CLERK:  Case number 3:24CR58.

4      United States of America versus Jarvon James

5  Starkey.

6      Ms Angela Mastandrea represents the United

7  States.

8      Ms Carolyn Grady represents the defendant.

9      Are counsel ready to proceed?

10     MS MASTANDREA:  The United States is ready.

11     MS GRADY:  Judge, defense is ready.

12     Good morning, Your Honor.

13     THE COURT:  This matter is before The Court

14  this morning for sentencing.

15     Ms Grady, have you received a copy of the

16  presence report and copy of the officer's

17  computation of the United States Sentencing

18  Guidelines?

19     MS GRADY:  Yes, I have, Your Honor.

20     THE COURT:  Turning first to the text of the

21  presentence report, are there any additions or

22  corrections to the report?  I understand that you

23  have motions concerning the guidelines, but with

24  respect to the text of the report are there any

25  additions or corrections you want to bring to my

1    attention?

2         MS GRADY:  Judge, all of the corrections were

3    made and listed in the addendum.  So I have nothing

4    further.

5         THE COURT:  All right.

6         Ms Mastandrea, any objections or any additions

7    or corrections?

8         MS MASTANDREA:  No, sir.  None.

9         THE COURT:  The report will be ordered filed,

10   made a part of the record in the case, and this

11   Court will adopt the U.S. Probation Officer's

12   factual findings and conclusions, with the exception

13   of the U.S. Sentencing Guidelines.

14        The U.S. Probation Officer has determined that

15   this defendant has a total offense level of 34.  He

16   is in criminal history category six.  His guideline

17   range as calculated by the officer is 262 to 327

18   months.

19        I understand that you have issues concerning

20   the guidelines, but has the officer properly

21   calculated them based upon the information that he

22   had?

23        Ms Grady?

24        MS GRADY:  Judge, he is properly determined to

25   be a career offender when the guidelines are

1  corrected, Judge.

2  THE COURT:  Okay.  I understand that.

3  MS MASTANDREA:  We agree that he is a career

4  offender.

5  THE COURT:  Very well.

6  I am going to deal with the 3553(a) factors and

7  then turn to the objections concerning the

8  guidelines.

9  This defendant was born and raised in

10  Wilmington, Delaware.  He 35 years old.  He resided

11  in Charlotte, North Carolina prior to his arrest.

12  His father is 65 years old.  Resides in Delaware.

13  He is retired.  He is in good health.  There is no

14  history of drug abuse, and no history of any

15  criminal activity on his father's part.

16  His mother is 70 years old.  She resides in

17  Newark, Delaware.  She is retired from Bank of

18  America.  She has no history of drug abuse or

19  criminal record.

20  His sister is 48 years old.  She lives in

21  Massachusetts.  She does have a criminal record and

22  a history of drug abuse.

23  His brother is 46.  He resides in Delaware,

24  works construction, and does have a history of

25  substance abuse and a criminal record.

1    Mr. Starkey resided with his parents until

2  their divorce.  He lived in a high crime area.  He

3  has never been married.  He has four children from

4  prior relationships; age three, two, one eight years

5  old and one is ten.  All are in good health.  He had

6  regular contact with them prior to his arrest.  And

7  he provides some financial support.

8    The defendant basically is in good physical

9  condition.  But he has injuries to his spine and

10  lower back from auto accidents.  He does have a

11  gunshot wound to his stomach.  He has had several

12  hospitalizations for drug overdoses, and he was

13  diagnosed with attention deficit disorder.

14    He reported to the probation officer that he

15  consumes three or four drinks per week, and he

16  regularly uses pain medication.

17    He earned his GED while confined at the

18  Pennsylvania Department of Corrections.  He attended

19  public school through the ninth grade.  He completed

20  several educational programs at Northern Neck

21  Regional Jail and the Pamunkey Regional Jail.

22    He was last employed at the Family Dollar Store

23  in Matthews County, North Carolina.  And prior to

24  that he worked as a fork lift operator.

25    He has extensive criminal history.  And we will

1  go through that a little bit later.

2      He has at least five felony convictions

3  beginning at age 17.  He has had 20 convictions,

4  including possession of heroin, resisting arrest,

5  conspiracy, second degree agreement to engage in

6  felony conduct.

7      Those are the basic 3553(a) factors.

8      With respect to his criminal history that will

9  be the subject of motions, we will attend to that

10  later.

11      Either side have any evidence you want to put

12  on this morning?  I may have asked that before.  If

13  I did, I apologize.

14      MS MASTANDREA:  No, Your Honor.

15      MS GRADY:  No evidence, Judge.  No, sir.

16      THE COURT:  You have some objections to the

17  guidelines and a motion for a downward variance, is

18  that correct, Ms Grady?

19      MS GRADY:  That's correct.

20      THE COURT:  I will hear those right now.  I

21  have read all the memoranda filed by both sides and

22  I am ready to hear argument.

23      MS GRADY:  Yes, sir.

24      Judge, I would like to address the objections

25  first.

1    THE COURT:  To the guideline calculation?

2    MS GRADY:  Sorry?

3    THE COURT:  To the guidelines calculation?

4    MS GRADY:  Yes, sir.

5    THE COURT:  Yes, ma'am, you go right ahead.

6        I read your memorandum, I reviewed the cases,

7    and I appreciate your fine work.

8    MS GRADY:  Yes, sir.

9        Judge, I wanted to make it clear that the

10   guidelines account for him being a career offender

11   where he doesn't under the case law in Delaware and

12   under the Fourth Circuit law under Campbell, and the

13   guidelines as they existed prior to them being

14   amended on November 1st of 2023.  That these two

15   predicate offenses, which is specifically paragraph

16   30 and paragraph 40 of the presentence report, do

17   not constitute a predicate offense and therefore

18   Mr. Starkey is not a career offender.

19       And I would like to address my argument at this

20   time on that.

21   THE COURT:  You go right ahead.

22   MS GRADY:  Yes, sir.

23       Judge, as you know --

24   THE COURT:  There is some question as to

25   whether Campbell is good law, and I want to hear you

1   on that.

2       MS GRADY:  Well, it is -- so at the time that

3   Campbell addressed the issue of whether attempts

4   were in the statute or not in the statute in West

5   Virginia the guidelines did not -- it was in the

6   commentary that they included the word "attempt."

7   So once Campbell came out and said that a statute

8   that encompasses both an act and attempt is not --

9   is not a predicate because it is too broad.

10      THE COURT:  But here there is two separate

11  statutes in Delaware.

12      MS GRADY:  There are.  There were two separate

13  statutes in the Groves case as well as the Davis

14  case.  But we had a specific case on point from the

15  Delaware Supreme Court that has precedential value

16  that says that the attempts are punished under the

17  statute.  That is the Boardly case that has been

18  briefed.  Obviously, The Court, I am sure has a

19  copy, but I have another copy for The Court if you

20  want.

21      THE COURT:  I reviewed all your cases, and I

22  appreciate you supplying them.

23      MS GRADY:  Thank you, Judge.  I always try to.

24      So Boardly, the Supreme Court in Boardly, it

25  was a defendant, it was a female, who was charged

1    under the same statute as Mr. Starkey, and yet she

2    only attempted to do the crime.  And her lawyers

3    tried to argue, hey, it was only an attempt, she

4    should not be punished by the 15-year mandatory

5    minimum which was associated with that crime if it

6    was complete.

7          And the, as briefed, and as is quoted on page

8    three of my brief, of my objection, the Supreme

9    Court determined that she could not get out from

10   under the fact that she was convicted under that

11   statute, and that statute expressly includes attempt

12   to transfer.  So she was expressly -- put forth the

13   argument that attempted -- and Supreme Court of

14   Delaware said, no, it is in fact treated as the

15   primary crime, which is exactly what happened here.

16         Mr. Starkey, not what he did, its what the

17   statute of conviction and the elements.

18         THE COURT:  Under my reading of this in the

19   State of Delaware there is separate statute that

20   makes an attempted distribution a consummated

21   transaction.

22         MS GRADY:  That's correct.  But, just like in

23   Campbell, as Campbell decided -- and Campbell is,

24   obviously, I am arguing, is the precedent that this

25   court should follow -- that that's what West

1   Virginia was.  Virginia had, West Virginia had a

2   different statute.  And because the guideline didn't

3   include attempt Campbell said likewise.

4        Now, Delaware also has a separate statute.

5   But, the Supreme Court of Delaware said, no,

6   attempts are punished under the primary offense,

7   which I think is 4752 or 54.  Therefore, the

8   separate statute doesn't matter.  The attempts are

9   subsumed into the crime itself, which is, the

10  Delaware statute defines delivery as attempted

11  transfers.

12       So it is exactly Campbell.  And the United

13  States has brought up other cases from third circuit

14  or from the -- I can't the other -- but this court

15  has direct action from Campbell and the Fourth

16  Circuit.  It is not like -- it's not like Davis.

17  Because of --

18       THE COURT:  Well, the United States in Miller,

19  didn't they indicate that it does qualify as a

20  controlled substance offense?

21       MS GRADY:  I'm sorry.  Say that question again.

22       THE COURT:  U.S. versus Miller, Fourth Circuit,

23  case, 75 F 3d 215.  Fourth Circuit case.  Came out

24  in late 2023.

25       MS GRADY:  Miller dealt with, not with the

1    Delaware statute.

2         THE COURT:  It dealt with a similar statue,

3    though.

4         MS GRADY:  No, I could find nothing to deal

5    with the Delaware statute.  That is what is at

6    issue.  That is why it is sort of a case of first

7    impression, which is why I originally didn't brief

8    it, because I didn't see it.  And in looking -- so,

9    Judge, it's, this is specific to Delaware.

10        And the Delaware Supreme Court has spoken.  So

11   I don't think it had to be as complicated as,

12   because we have Campbell as the law, there is a

13   question about whether Grove and Davis, and I

14   suppose Miller, Judge, would say that there are

15   other statutes that deal with it.  But those are --

16   those are other states.

17        THE COURT:  But to repeat my comment earlier Ms

18   Grady, isn't there a Delaware statute that makes an

19   attempted distribution a consummated sale of drugs?

20        MS GRADY:  There is a statute that says that an

21   attempt is an illegal act, yes.

22        THE COURT:  It says it is an act of

23   distribution, does it not?

24        MS GRADY:  I am not aware of that, Judge.

25        THE COURT:  It stopped short of a completed

1    drug transaction.

2        MS GRADY:  Right.  Which is, I suppose, why the

3    Delaware Supreme Court decided that even though that

4    defendant was arguing, and she wasn't charged with

5    attempt, she was charged under the statute that

6    carried the 15 mandatory minimum.  Fifteen year

7    mandatory minimum.  She tried, that defendant tried

8    to get out from under that by saying, I committed an

9    attempt.  There is a separate statute.  I should not

10   be punished under the 15 year mandatory minimum.

11   And the Delaware Supreme Court said, no, no, an

12   attempt is part of the statute, you are subject to

13   the 15 year mandatory minimum.  That is precedential

14   value.  Supreme Court orders are precedential value

15   in Delaware, and therefore they should be

16   precedential value in this case with this Court.

17       So, yes, there is, there are separate statutes.

18   But this case is completely analogous to Campbell,

19   which is still good law on that particular issue.

20       That is my point, Judge, on that.

21       THE COURT:  Okay.

22       MS GRADY:  The United States has made a

23   secondary argument that this is a divisible statute,

24   that the Delaware statute is divisible.  Of course

25   the United States has the burden to prove whether it

1    is a divisible or not.  They have the burden of

2    showing the statute treats manufacture, distribute,

3    possess with intent as separate elements, not

4    alternative means.  As The Court knows, as I have

5    cited in my reply brief on page three the government

6    hasn't cited to a single case that indicates the

7    statute is divisible as to act.  The case that they

8    put forward, United States versus Jackson, which was

9    an order from a District Court judge, I believe,

10   that Jackson talked about divisibility of the

11   statute in terms of what was distributed.  Marijuana

12   or cocaine or whatever.

13        And specifically the -- under the case of

14   Johnson versus State, which is a Delaware case, the

15   Supreme Court affirmed that when a defendant was

16   indicted for delivery he can be convicted under the

17   language of possession with intent to distribute.

18        So, Delaware court has again decided that the

19   statute was indivisible; there are a number of

20   elements, not different crimes.

21        So I think that that is not a fact that -- that

22   is not an argument that should be prevail either.

23        So I think the issue seems convoluted, but I

24   think it is more simple.  It is, does Campbell

25   apply, does Delaware -- I mean, there is no Fourth

1    Circuit case on Delaware -- does Delaware law say

2    that attempts should be treated as -- that are in

3    the statute, and if they are in the statute,

4    Campbell says that they do not count as a predicate

5    offense.

6         That is my opening remarks on that.

7         THE COURT:  Okay.  Thank you very much.

8         Ms Mastandrea.

9         MS MASTANDREA:  I think that this has become so

10   convoluted and complex when it need not be.

11        Mr. Starkey was convicted of possession the

12   with the intent to deliver cocaine and possession

13   with intent to deliver PCP.  As The Court has noted

14   and is fully aware an attempt is a separate statute

15   under Delaware law.  And, as I cited in our response

16   to the defense objection to the career offender

17   designation, the statute that, the two statutes that

18   he was constricted under in their definition mirror

19   what happened in the federal cases, in the federal

20   statute.

21        And Groves says that the statute of an attempt

22   under federal law would be superfluous if it was a

23   part of the drug trafficking under federal law.

24        The same thing with Delaware.  It is a

25   completely parallel and on point analysis of the two

1   statutes that Mr. Starkey was convicted of.  He was

2   convicted of possession with intent to deliver

3   cocaine, and possession with intent to deliver PCP.

4        In Campbell, the court in Campbell said that

5   West Virginia had not separated out attempt,

6   separated from the distribution crimes there.

7        So that is why it was treated a little bit

8   differently.  But Groves is what controls here.

9        THE COURT:  A separate Delaware statute that

10  makes an attempt a drug distribution offense --

11       MS MASTANDREA:  Correct.

12       THE COURT:  -- as I read the law.

13       MS MASTANDREA:  Yes.

14       So here we have the two predicate offenses;

15  possession with intent to distribute cocaine,

16  possession with intent to deliver, or deliver

17  cocaine, and deliver PCP.  It mirrors the federal

18  definition.  There is a separate statute for the

19  attempt.  And the case that the defendant cites, The

20  Court was talking about plea agreements.  Often

21  times a plea agreement they will be allowed to plead

22  to a different charge than what is in the

23  indictment.  In this case the defendant pled guilty

24  to possession with intent to deliver cocaine,

25  possession with intent to deliver PCP.  There is no

1   question about it.  Under the divisibility you can,

2   you know, I laid it all out, but these two statutes

3   are divisible, and the drug, the identification of

4   the drug is also something that has to be proved.

5   So it is even further divisible by the actual drug

6   that was sold.

7        For example, you can't just come into court and

8   say that he distributed a controlled substance.  In

9   Delaware you say he distributed cocaine, and cocaine

10  had a separate subcategory to that.

11       So, in Delaware possession with intent to

12  deliver is a completed offense.  It is divisible

13  because they define multiple crimes.  And the state

14  has to prove distinct elements.

15       So, I think that is is all laid out.  It is a

16  categorical match to what the Fourth Circuit talked

17  about in Groves.  I think, Judge Payne also was of

18  the same opinion on a Virginia statute that again

19  mirrors what was happening here in Delaware in the

20  Tracy Brown case that --

21       THE COURT:  How did that come out in his court?

22       MS MASTANDREA:  Found that Mr. Brown was a

23  career offender under the Virginia -- he was charged

24  with possession with intent to distribute marijuana.

25  And possession with intent to distribute -- if I

1    could have just a moment, Your Honor, I will tell

2    you what the second one was -- I don't want to

3    misstate.  I think it was also cocaine.

4         If I could have just a moment, Judge.

5         THE COURT:  Take your time.

6         MS MASTANDREA:  Yes.

7         He was charged with possession with intent to

8    distribute marijuana, and possession of Schedule I

9    controlled substance with intent to distribute.

10   That was in Tracy Lorenzo Brown, Jr.  That case 3:22

11   CR 134 with Judge Payne's opinion at docket entry

12   57.  Again, that mirrors what's happening in this

13   case.  It is exactly the same thing.

14        So, it seems to me, it seems much simpler than

15   what we are making it here.  802 11 under the

16   Federal Code mirrors Delaware's definition of

17   deliver.  Both are drug trafficking offenses.  There

18   is a separate offense in Delaware for an attempt.

19   He was not charged with any attempt.  He was charged

20   with distribution, possession with intent to

21   deliver.  That is under Groves a drug trafficking

22   crime.  It would be even under Campbell because

23   under Campbell there would be were, the attempt was

24   part of the substantive offense and so here that is

25   not the case.

1      And so we would be saying, for example, someone

2   convicted of attempt in federal court under 21

3   U.S.C.A. 846, that wouldn't count any more because

4   it would have been subsumed in 841.  That doesn't

5   make any sense there, federally, and it doesn't make

6   any sense under the Delaware code.

7      We ask The Court to deny the defendant's

8   motion.

9      THE COURT:  Thank you very much.

10     MS MASTANDREA:  Thank you.

11     Ms Grady, I will give you the final word.

12     MS GRADY:  Briefly, Judge.

13     The kind of -- the facts of the charge for

14  which Mr. Starkey was convicted in paragraphs 30 and

15  40 aren't the relevant consideration.  The relevant

16  consideration is what are the elements of the crime

17  that he was convicted of.  It is the evidence that

18  matters not the facts.

19     Regarding, you know, the way Campbell came out,

20  it upset a lot of, a lot of case law.  Because the

21  Fourth Circuit said, oh, there is an attempt in

22  there.  And it upset -- so it voided the career

23  offender designation for Ms Campbell.  But the issue

24  is that the United States Sentencing Commission

25  says, huh, we need to change that.  And within a

1    year of Campbell they moved the attempt language

2    from the commentary up into the actual guidelines,

3    which denotes that both the Fourth Circuit under

4    Campbell, under then guidelines, which apply here,

5    was a problem.  There was a problem regarding the

6    over-breadth of the statute in West Virginia, and I

7    would submit that is the same over-breadth that we

8    have in Delaware.  That has not been ruled on.  So I

9    would submit that there was a change for a reason.

10   The Fourth Circuit determined there was a problem

11   when attempts are within.  And so whether there --

12   it's, I wouldn't say irrelevant as to whether there

13   is an attempt statute.  There are -- the Fourth

14   Circuit has tried to distinguish Campbell by saying

15   if there is a separate attempt statute.  But the

16   fact remains that in Delaware attempts are punished

17   as under the same offense as Mr. Starkey was

18   punished, and therefore it's an over broad

19   definition of what a possession -- what a controlled

20   substance is under the predicates for career

21   offenders under 4 B 1.2, and The Court should not

22   find that these are predicate offenses, Judge.

23        THE COURT:  Thank you very much, Ms Grady.

24        All right.

25        Before the Court this morning is the

1    defendant's objection to the career offender

2    enhancement as applied by the probation officer in

3    calculating the United States Sentencing Guidelines

4    in this case.

5        Absent the two predicate offenses he would not

6    be a career offender.  Because the underlying

7    statute includes attempted transfers, which are not

8    a completed delivery, the defendant contends that he

9    does not qualify as a career offender.  He has two

10   relevant convictions here that are the principal

11   qualifications or justification for being a career

12   offender.

13       Number one, in 2012 possession with the intent

14   to deliver phencyclidine.  And 2019 possession of

15   cocaine with the intent to deliver.

16       The defendant argues that because both Delaware

17   statutes are underlying convictions include

18   attempted delivery of drugs they are not controlled

19   substance offenses under Delaware law.  Citing

20   United States versus Campbell, 22 F4th 438, Fourth

21   Circuit case, 2022.  However, Delaware has separate

22   statutes that define completed acts of delivery, as

23   the actual, constructive, or attempted transfer from

24   one person to another.  That is 11 Delaware code

25   page section 531.  Moreover, under Delaware law an

1    attempted transfer of a controlled substance is

2    statutorily a completed drug transaction.  The

3    statute separately criminalizes attempt offenses.

4    Therefore, as the Fourth Circuit concluded in United

5    States versus Miller, 75 F4th 215, Fourth Circuit

6    case, 2023, it separately qualifies as a controlled

7    substance offense.

8         Recently the Fourth Circuit reaffirmed this,

9    reaffirmed this holding in Miller in United States

10   versus Jackson, which is 2025 W L 34 989 1,

11   January 31st, 2025 opinion where they declined to

12   follow Campbell and reaffirmed their position in

13   Miller.  So The Court finds that attempted transfer

14   of controlled substances is a controlled substance

15   offense under Delaware law.

16        So the objection is overruled.  And I am going

17   to explain the ruling herein and clarify it a little

18   bit more in a detailed forthcoming written opinion.

19   But The Court believes that based upon the record

20   and the law in Delaware he has properly been

21   classified as a career offender.

22        The objection is overruled.

23        I will now turn, Mr Grady, to your motion for a

24   downward variance.

25        MS GRADY:  Thank you, Judge.

1       So, Your Honor is aware of, obviously, of my

2   position regarding the motion for a downward

3   variance.  I briefly briefed the issue of whether

4   the downward departure was necessary, but within

5   that briefing I admitted that it wouldn't change his

6   guideline.  But I wanted The Court to note that

7   things aren't as bad as they seam because he is

8   certainly closer to criminal category five.

9       That is all I will say about downward

10  departures.  I understand it's not the strongest

11  argument, and I would like to focus on the downward

12  variance.

13      THE COURT:  I always appreciate your integrity.

14      MS GRADY:  Thank you, Judge.

15      You know -- yes.

16      So the issues we have before The Court and what

17  I ask The Court to downwardly vary on if The Court

18  found that Mr. Starkey was a career offender is on a

19  number of grounds.

20      The first ground is that the offenses, one in

21  2011, one in 2018, were the arrests.  That was when

22  he was 21 years old and when he was 29.  He is now

23  35.  These are offenses under which Mr. Starkey

24  received a total sentence of 18 month.  So, you

25  know, when you look at the 3553(a) factors that have

1    been briefed, one of the things The Court has to

2    look at is whether the sentence is sufficient but

3    not greater than necessary.

4        The career offender guideline increased by

5    seven levels because of those two offenses.

6    Mr. Starkey is a criminal history category six.  He

7    is that.  And the guidelines would be 130 to 162

8    months.  That is a range that is more, which is more

9    commiserate with what this court should do because

10   those seven levels would increase because of the --

11   because of the career offender status.  The career

12   offender status I think -- well, I know from case

13   law -- was originally intended to punish the king

14   pin, the folks that are the really bad individuals,

15   the habitual drug dealers.  And understanding that

16   when I put in my pleading things about the fact that

17   Mr. Starkey is not a king pin, we have two priors;

18   one when he was 21, when he was 29.  He has other

19   criminal history.  There is no question.

20       THE COURT:  Well, he has 18 criminal history

21   points; five felony convictions, three of them

22   involving drug trafficking.

23       MS GRADY:  Right.  Well, one of them -- two of

24   them involved drug trafficking.

25       The issue that I see is that the only

1    difference between Mr. Starkey's guideline on

2    whether he is basically when he is 27 versus a 34,

3    which is what the guidelines have him as, is the

4    criminal, is he a career offender status, which I

5    say over represents his history.  He has crime.

6    There is no question.  But the career offender

7    status is meant to punish drug dealers.  It is --

8    Mr. Starkey has those.  But one when he was 21 one

9    when he was 29.  As you know, Judge, the United

10    States Sentencing Commission is looking, and has

11    asked for comment, and is considering amending the

12    career offender guideline to deal with punishment as

13    a career offender for two prior federal offenses.

14    They are trying to take state offenses off the table

15    for predicate offenses because states treat folks

16    differently.

17        In Virginia he would have gotten maybe 18

18    months on one of them.  Maybe as this court has seen

19    people deal drugs in the City of Richmond you get no

20    time. It is a suspended sentence.

21        THE COURT:  That is why so many cases come into

22    Federal Court.  We realize that.

23        MS GRADY:  I do.  I mean, I have been here

24    twenty years.  But that is also why the Sentencing

25    Commission is recognizing that there are so many

1   state convictions, and plea agreements that come

2   into play because of the five-year mandatory minimum

3   that the Commission itself, and I am putting this on

4   the record for any kind of future whatever, he,

5   Mr. Starkey, has two priors and no federal offenses.

6   And the United States Sentencing Commission at this

7   time is considering changing the predicate offense

8   language to just be federal offenses.

9       So Mr. -- so that is one of the issues.  I

10  pointed in my brief, and I believe it was on the

11  statistics section, statistics, you know are what

12  they are, but the United States Sentencing

13  Commission keeps them.  And the Sentencing

14  Commission kept them regarding career offender

15  punishments.  That is why -- and the severity of the

16  increase from a non career offender guideline to a

17  career offender guideline.

18      And in the case I am referring in my brief on

19  page nine -- eight, nine, and ten -- the average

20  sentence for a drug trafficking only career offender

21  was 134 months.  So that is the -- that is the

22  United States Sentencing Commission keeping track of

23  what judges do all over the country with folks who

24  are determined to be career offenders and non

25  violent career offenders.  And non violent is

1  obviously they didn't have a robbery, murder or

2  shooting or anything like that.  Mr. Starkey doesn't

3  have that.  He has some conduct that is not helpful

4  to my argument.  But he is not, cannot be deemed to

5  be a violent offender under the career offender

6  guidelines because there are only two predicate

7  offenses are possession with intent and delivery

8  under the Delaware statute.

9       THE COURT:  I don't know that being a violent

10  offender is necessarily a prerequisite to being a

11  career criminal.  It is a factor to consider, you

12  are right --

13       MS GRADY:  Right.

14       THE COURT:  -- but it is not controlling.

15       MS GRADY:  No.  It's not controlling.  But I

16  think my argument is very different if Mr. Starkey

17  sits here with two robbery convictions and two

18  firearms.  I can't say he is a non violent offender.

19  I can say now that he is because the predicate

20  offenses are two possession with intent to

21  distributes and/or drug trafficking crimes.

22       The Commission itself looks at the statute of

23  what career offenders are sentenced all over the

24  country.  And the average sentence is 134 month.

25       So that is, again, a part of my basis of why I

1  think Mr. Starkey needs to receive a sentence that

2  is less than the guidelines as a career offender.

3  And that I think it is much more suitable to be in

4  that range that doesn't account for this random

5  seven point increase in the offense level.

6      If Mr. Starkey was criminal history category

7  three and he went from three to six because of those

8  two offenses, I think that there is an argument that

9  would probably shoot mine in the foot.  But here we

10  have the it is properly computed category six, it

11  does account for the drugs, it does account for his

12  criminal history, and it increases by seven levels.

13      And what I said originally when I started

14  talking is that this court is tasked with issuing a

15  sentence that is sufficient but not greater than

16  necessary.

17      The longest sentence -- and in order to provide

18  deterrence and adequate punishment, and so forth.

19  Mr. Starkey's longest sentence was 18 months.  If

20  this court were to sentence Mr. Starkey at the high

21  end of 161 or 162 months, that is approximately nine

22  times the sentences he previously received.  If this

23  court goes to the low end of the career offender

24  guidelines, it is like 14 times.

25      THE COURT:  I understand that my state

1      colleagues are very compassionate people.  We

2      understand that.

3          MS GRADY:  Right.  But I am saying that this is

4      in, this is in the standard that this court must

5      look at.  You have to issue a sentence that's not

6      greater than necessary.  Nine times his previous

7      sentences versus 14 times, 15 times.  In fact, that

8      is over kill.  That is something that is beyond just

9      deterrence.  That is just --

10         THE COURT:  But those sentences obviously were

11     not sufficient to deter his criminal behavior.  And

12     those cases were within a year or less than a year

13     he was back out committing crime again.

14         MS GRADY:  Right.  And I think that goes to one

15     of my second points, which is the substance use

16     disorder, the incredible problem that he has.  The

17     incredible addiction that drives him to do some

18     incredibly stupid things.  I mean, driving and

19     having accidents, driving and having problems.

20     Using embalming fluid to get high.  Using it as a

21     vehicle.  They shoot that into dead bodies.  And

22     Mr. Starkey is shooting that into his live body in

23     order to get high.  That is chemicals in your brain.

24     You know, he is not all -- you know, he is not

25     thinking with a full deck here, Judge, if I can mix

1   all kinds of metaphors there.  He had a drug problem

2   early when he witnessed his sister.

3        The United States has made good points that his

4   parents -- and The Court has -- that his parents are

5   good folks and that they struggled with the

6   problems.  But his mom did recognize that

7   Mr. Starkey fell below the radar when she had to

8   take care of his older sister's children.  And

9   Mr. Starkey started using alcohol at a young age.

10  Mr. Starkey started using other drugs at a young

11  age.  And then because those drugs didn't take away

12  the pain or fill the void, or do whatever one needs

13  to do to justify the drug use, he starts ingesting

14  embalming fluid.  And he had two, I think three

15  times where he was hospitalized because they called

16  a wet overdose where he had so much chemical in his

17  body, I mean you could die.

18       THE COURT:  I will recommend to the Regional

19  Director of the Bureau of Prisons that he be allowed

20  to participate in their intensive drug treatment

21  program.

22       MS GRADY:  That would be great, Judge.

23       And we have some other requests on that, too.

24       But that is the reason for downward departure.

25  It is the extreme drug addiction that he has that

1    drove his behavior which got him into the situation

2    where he is now, which is, that he is driving drugs

3    up and down the east cost, up or down, the east cost

4    and in user quantity amounts.  And he even had an

5    accident on the day he got arrested because he was

6    not -- he was not well.  He was inebriated, he was

7    intoxicated, under the influence of drugs.  There is

8    no evidence of alcohol.  I meant to say under the

9    influence of drugs.

10   So he is somebody that has such a severe

11   addiction that this court should recognize that as,

12   was a driving force when he was 21 years old and got

13   that one, earned one conviction.  And then when he

14   was 29 when he earned the second conviction.  That

15   is a factor that The Court understands is a weighty

16   3553(a) factor.  His character and his background.

17   So that is the second factor that I rely upon.

18   And the third factor is -- and, you know,

19   statistics agree or disagree depending on where you

20   find them -- and the statistics in this case have

21   Mr. Starkey being extremely punished or enhanced by

22   para-fluorofentanyl.  And that from the United

23   States Office on Drugs and Crime, not Michigan, but

24   a United States commission looked and compared the

25   difference between para-fluorofentanyl and fentanyl

1    in terms of toxicity in relation to morphine.  And

2    fentanyl is much worse than, and much more powerful,

3    than para-fluorofentanyl.  And Mr. Starkey had one 1

4    point 34 grams of fentanyl and 123 grams of,

5    somewheres in the range, about 122 grams of

6    para-fluorofentanyl.  So he was in a situation --

7         THE COURT:  But each of them are potentially

8    lethal, depending upon how they are used, correct?

9         MS GRADY:  Absolutely, Judge.

10        THE COURT:  Okay.

11        MS GRADY:  But what the nation did with crack

12   what they did with heroin, what they have done with

13   opiates, they are doing that with

14   para-fluorofentanyl and fentanyl.  They are saying

15   it is a deadly drug, we are going to arrest and

16   incarcerate our way out of this problem.  We are

17   going to take this guys off the streets for

18   tremendous periods of time.

19        And I am submitting that we have learned that

20   crack cocaine was wrong.  We understood the

21   heroin -- and the guidelines have been adjusted --

22   not the heroin, but for crack cocaine.  And we are

23   in that same boat here.  We are going to find out in

24   five years, maybe less, that there is -- that this

25   punishment is not merited because the drug -- they

1  are just going to move on to something else.  This

2  drug is being over weighted when in reality it is

3  not as strong as fentanyl.  And the guidelines that

4  drive this are the para-fluorofentanyl, which is at

5  a level of 16 versus fentanyl which is 224.

6      So it is dramatically less when its guidelines

7  are dramatically higher.  That is another factor

8  upon which I want this court to consider a lower

9  sentence.

10     I have 3553(a) factors that I can talk about at

11  the same time but, or does The Court want me -- I

12  sort laid out the three factors that I want the

13  court to consider, or should I keep going?

14     THE COURT:  Go ahead.  Tell me anything you

15  think I need to know in determining what sentence is

16  appropriate in the case.

17     MS GRADY:  Okay.  Thank you, Judge.

18     THE COURT:  Go right ahead.

19     MS GRADY:  As I indicated in the pleadings,

20  Mr. Starkey was arrested.  He came in and he pled

21  guilty.  Once the lab reports were accurate in terms

22  of what the actual weight was, because in this case

23  the actual weight of the baggy is dramatically, or

24  the glassine envelopes, dramatically was, is higher

25  than the actual weight of the drugs.  The actual

1 weight of the drugs is so small that one could say

2 it is a user quantity.  Like a Pepsi drug driving

3 down the road with cases of 12-ounce cans.  It

4 wasn't a gasoline tanker full of gasoline that he

5 distributed, you know, as a broad rule.  These are

6 user quantities that Mr. Starkey was driving, and I

7 would submit was driving to support his habit.

8   He -- the United States and I have sort of

9 disagreed on whether he is the driver or courier.  I

10 don't mean to intend to imply that he is a mule,

11 that he is blind and he is just driving, you know,

12 something he doesn't know.  He is a drug addict.  He

13 knows what he is driving.  But he is not the

14 profiteer.  He is driving a rental car.  He is an

15 extreme drug addict.  No drug king pin is going

16 to -- no owner of those drugs is going to drive

17 those down the street in plain view wandering

18 around, you know, 95.  It is Mr. Starkey who created

19 some really bad tracks for himself, but he is not

20 the owner of these drugs.  He can't be.  He doesn't

21 have that kind of money.  There is no evidence of

22 that kind of money.  He doesn't work.  He hasn't

23 worked, at least a job where you get a pay check.

24 He has worked to try to support his kids, and visit

25 with his kids, and does things to try to be a good

1    dad.  But he is not the mastermind or the king pin.

2    And that was my argument about the courier. I wasn't

3    saying he was blind.  I'm saying he is not the

4    person who owns that.  He is driving it to

5    distribute it.  That is what, that is what the

6    United States says he told the police.  Yeah,

7    distributing means, another word for giving it to

8    somebody.  He is going somewhere to give it to

9    somebody.  He is not going to distribute 4200

10   baggies.  He is too high, and too focused on drugs

11   to be doing that.  So I just don't think

12   that that -- it is a factor, but there is no

13   overdose that's related to him.  There is no --

14   these are tweeny, tweeny amounts, which would be

15   consistent with actually intending small user

16   amounts and not placing it, not hiding it in

17   cocaine.  These are tweeny weeny little glassine

18   packets.

19        So I would ask The Court to consider that.

20        You know, as I said, Judge, 3553(a) factors, he

21   has four children.  One of -- the child was in Ms

22   Robinson's -- they were in Florida.  That is, you

23   know that, is where she expected him.  So she was

24   extremely disappointed to learn that he is doing

25   this.

1        The other two, the other three children, they

2   have been taken care of.  They are in Delaware.

3   They are, you know, they are doing what kids do.

4   They are going to miss their dad.  They are going to

5   miss their dad for a decade.  He was being a good

6   dad prior to that.

7        I turn to -- as good a dad as he could in all

8   the circumstances under which we find him.

9        We have the letters which I think are really

10  some of the good letters, best letters I have seen

11  in a while, and they come from folks who care about

12  him.

13  THE COURT:  They have been all been reviewed by

14  The Court.  Thank you for submitting them.

15  MS GRADY:  Yes, sir, Judge.  You have his

16  letter I will deal with in a second, but his mother

17  deals with the challenges that her son indicated,

18  medication and such, but she talks about the murder

19  of their nephew, his, essentially, cousin.

20       And mother, is the mother of great nephew.  So

21  somebody that is kin to him, like a son to me.  And

22  Jaron was deeply affected by his loss and struggled

23  to process, was compounded by subsequent incidents,

24  violent death of his best friend, witnessing a close

25  cousin being shot multiple times, who later

1  succumbed to the gun violence.  So he has a lot of

2  violence.  To say that he grew up in a family

3  resembling any of ours is a falsity.  He grew up in

4  a high crime area, he grew up in an area where

5  drugs, drug dealing, shootings, violence, was a

6  regular thing.  Did his parents do the best they

7  could?  Yes.  They clearly are folks that have good

8  stability.  I don't think that Mr. Starkey was

9  raised with the same kind of stability that any of

10  us have.  And so that is why he has been really

11  hampered by the traumas that he sustained as a young

12  boy.

13       His father talks about him dreaming of owning a

14  business.  Trying to work.  He is a smart young man

15  clearly able to do something.  Clearly able to want

16  to dream of a better life for himself and his kids.

17  That is what he dreams for now.

18       He has the letter that he submitted to The

19  Court.  He talks about I have been using drugs since

20  I was 13 years.  He said using drugs, you don't even

21  see things.  You see things while your mind is

22  clouded.  Being on drugs is a hard feeling for me to

23  describe.  Even when using them I feel low and

24  worthless.

25       It is a self-deprecating escape from the world,

1   escape from your problems kind of situation.  And he

2   has done wrong in the world.  But a sentence that is

3   sufficient but not greater than necessary is a

4   sentence in the area of eleven years to 13 years,

5   not 20 to 22 years, which is what the career

6   offender guidelines take into account.

7         My goals, he said, from this point forward are

8   to be giving back to the community that I have taken

9   from.  I plan to work towards rehabilitation and

10  strive to be the best man that I can be.  He's going

11  to have a lot of time do that.  And, you know, I am

12  not sugar coating it and asking for a lesser

13  sentence than I think what would be appropriate, and

14  would be fair been the 3553(a) factors.

15        So that is what I am asking for, Judge.  I know

16  that I have a chance to respond, so I know The Court

17  has read the letters, and I, as I said, I think they

18  give a full picture in combination with

19  Mr. Starkey's criminal record.

20        On that closing note, the criminal record, as I

21  said, is not good.  But it's something that

22  encompasses who he is, it's encompassed in the

23  guidelines of a criminal history category six.

24        Now, I am not saying anything less than a six.

25  I am saying a seven bump under the career offender

1     is not an appropriate bump and This Court should

2     sentence within the 130 to 162 months.

3          THE COURT:  Thank you, Ms Grady.

4          Ms Mastandrea.

5          MS MASTANDREA:  Thank you, Your Honor.

6          THE COURT:  Address first the issue of whether

7     or not he should be treated as a career offender and

8     address any other points you want to raise with

9     respect to sentencing generally.

10         MS MASTANDREA:  Sure.  Thank you.

11         So, there is a couple of things that counsel

12    has raised in her filings and here before The Court,

13    so I would just like to talk for a moment if I may

14    about her motion for a downward variance.

15         The Court has determined that he qualifies as a

16    career offender, and basically what she is asking

17    this Court to do is grant him a 50 percent reduction

18    in his sentence.

19         In support of that she opines that

20    para-fluorofentanyl is less harmful compared to

21    fentanyl.  But para--fluorofentanyl has been

22    determined to be more dangerous than fentanyl, which

23    has a 50 to one hundred time potency of methadone.

24    One of the reasons why para-fluorofentanyl is not,

25    doesn't have the historical level of overdoses and

1    deaths is because when the person died of an

2    overdose, the drug testing that was done on the body

3    was not able to detect para-fluorofentanyl until

4    more recently.  So now that in a lot of places that

5    are able to defect para-fluorofentanyl they are

6    finding that overdose deaths due to

7    para-fluorofentanyl are significant.  And Congress

8    has determined that para-fluorofentanyl is more

9    dangerous than fentanyl.  To put up a crystal ball

10   to suggest one day they might not think that is not

11   where we are today.  You have to look at where we

12   are today.  And the courts have said, sorry, that

13   Congress has said that a hundred grams or more of

14   para-fluorofentanyl is a sentencing guideline range

15   of, or a mandatory minimum of ten years.

16       When she talked about the tweeny weeny bit of

17   drugs, I don't even know what that means.  He had

18   four thousand four hundred and ninety-seven bags

19   containing para-fluorofentanyl.  What happened is

20   the chemist randomly selects a number of them and

21   tests the quantities that are in them.  Of those

22   bags that were tested, she determined that doing the

23   multiplication that he had over a hundred grams of

24   para-fluorofentanyl.  But he also had fentanyl, and

25   he had 120 bags that contained fentanyl when he was

 1   stopped.  He admitted in a post Miranda statement

 2   that he had gone to Delaware to get them for

 3   distribution in North Carolina.  There is absolutely

 4   no indication that he is either a mule or just a

 5   simple courier.  But more importantly, he is not

 6   even tasked or tagged with having a leadership role

 7   or management role or any kind of role enhancement

 8   in this case.  So to talk about a drug king pin, I

 9   think what the defense means is a leadership role or

10   a leader or organizer of a large scale drug

11   trafficking organization.  That has not been applied

12   in this case.  So that should just be a complete non

13   starter when we are looking at that.  The courier

14   suggestion, again, is a complete non starter.

15       I want to just address her suggestion that if

16   he, if his two marijuana possession convictions were

17   not counted he would be closer to criminal history

18   category five and six.  That doesn't even make sense

19   because if you take those -- he has 18 counted

20   criminal history points.  If you took away the three

21   he has 15 countable criminal history points.

22   Criminal history category six is 13 or more.  I

23   don't know you get closer to five than six even if

24   you took those away.  He is still well above the

25   requirements in criminal history category six.

1      When we understand -- I want to talk about a

2  downward departure which defense has raised, and I

3  want to definitely address it.

4      Now, the seriousness, the reliable information

5  in the case is the defendant's criminal history

6  category substantially over represents the

7  seriousness of his criminal history or the

8  likelihood that he will commit other crimes a

9  downward departure will be warranted.  That is the

10  standard.

11      Again, he is in criminal history -- he is well

12  into criminal history category six.  He qualifies as

13  a career offender.  And he does have violence in his

14  past.  He has not been convicted of a violent crime

15  but he does have violence in his past.  I would like

16  to address that for just a moment.

17      He had at 15 years old is when he began his

18  foray into the drug trade when he was caught with

19  eight plastic bags which tested positive for heroin.

20  He was circling around, and circling around with his

21  friend, and was caught with that.

22      He then proceeded as an adult to have a series

23  of criminal convictions, and the one I that want to

24  to talk about is one of the convictions that qualify

25  him under the career offender provision of the

1  guidelines. And that is where he was -- this is in

2  June of 2011 -- he removed his ex girl friend's lap

3  top from the apartment, punched out a window in her

4  car, and punched her in the face. At the time that

5  he did all this he was in possession of 69 grams of

6  PCP, as well as two firearms. So punching a girl,

7  ex girlfriend, in the face, being in possession of

8  firearms and being in possession of 69 grams of PCP

9  to me is a very serious, very serious offense.

10      These convictions were followed by not one or

11  two or three, but by four probation violations.

12  Demonstrating his failure to comply with the law,

13  follow the orders of the court. And then he has

14  numerous other probation violations.

15      The second violation that we have talked

16  about -- the first one in paragraph 30, this is

17  paragraph 40 -- is where he was going to sell

18  cocaine to an undercover officer where he had a

19  total of 26 bags of cocaine that he was selling.

20      Now, we bring him to what happened on the date

21  of his arrest here, where he has nearly 4,500 bags

22  containing para-fluorofentanyl, another 120 bags

23  containing fentanyl. That is not "a tweeny weeny"

24  bit. This is a significant amount of drugs. There

25  is a very small amount of these drugs that are

1    necessary to cause overdoses or deaths.

2         Defense counsel brought out, well, we don't

3    have any information that he caused any overdoes or

4    deaths.  He is not charged with overdoses or death.

5    There is no enhancement for overdoses or deaths.

6    There is no enhancement for king pin.  No

7    enhancement for a leadership role.  There is no

8    enhancement for any of the things that is suggesting

9    would be relevant to a downward variance or

10   departure in this case.

11        I want to address also the argument that he had

12   a, she said he has a substance abuse disorder

13   because he grew up in a, quote, drug-infested home.

14   As I pointed out in my filing, the sister that was

15   supposedly the catalyst for him having a drug scene,

16   being in a drug-infested home, was 14 years older

17   than him.  She wasn't even in the home by the time

18   he was seven years old.  So these are, these are all

19   things he chose to do.  He is now a grown man.

20   Acting like he is 14 years old, but he is not.  He

21   is a 35-year-old.  And his sister is 48 years old.

22   So, that should have absolutely no weight in terms

23   of the argument that is being made here.

24        The marijuana conviction we talked about.  He

25   is still a category six.  He is still a career

1    offender.

2        He has 21 convictions, 21 separate crimes that

3    he has been convicted of over the course of his

4    adult life.  Thirty-four years old.  He comes to

5    this court with all of these criminal convictions,

6    and yet even though he received some grace by the

7    state court in terms of the sentences that he

8    received in prior cases, he did not take that and

9    use that to his advantage.  Instead, he is still

10   trafficking in drugs, and not just any drug, he is

11   trafficking in serious harmful drugs.

12       I cite to a CDC report about the dangers over

13   para-fluorofentanyl.  There is no question that it

14   is.  So just talking about his adult convictions, he

15   has a criminal contempt conviction, a felony,

16   conspiracy to engage in burglary conviction.  He has

17   resisting arrest.  He has possession with intent to

18   distribute.  Possession of a firearm by a prohibited

19   person.  Probation violation in 2012, 2014.  Three

20   of them in 2014.  Driving under the influence of

21   alcohol or drugs, with probation violations in 2016

22   and 2017.  He has reckless driving and drug related

23   probation violations.

24       More reckless driving.  Possession of

25   controlled dangerous substance not marijuana.  He

1    has got a driving under influence multiple times.

2    Second time.  Third time.  Fourth time.

3        And then we get to the possession with intent

4    to distribute for which he received, for the

5    cocaine, and probation violation on that as well.

6        And he has after that possession of marijuana,

7    reckless driving, driving under the influence, and

8    then he comes to court here today with four thousand

9    nine hundred bags containing para-fluorofentanyl and

10   over 120 bags containing fentanyl.  This gentleman

11   is the quintessential career offender.  He is

12   thirty-five years old.  The sentence that he is

13   looking at is significant, but it is significant for

14   a reason.  The reason is that all of the guidelines

15   have been properly computed, there is nothing that

16   has been added that the defense argues that, you

17   know, he is not a king pin, he is not a leader, not

18   a manager, not an organizer.  There is no additional

19   points for that.

20       As to noncarrier offender sentence, that would

21   be inconsistent with the need to avoid an

22   unwarranted sentencing disparity.

23       Mr. Starkey has earned the guideline range of

24   262 to 327 months, and the need to protect the

25   public, the need for this court to show that he

1  needs to have respect for the law, the need to

2  reflect the seriousness of the crime that brings him

3  before this court, and to hopefully provide some

4  adequate deterrence is to sentence him within the

5  career offender guidelines.  This is a very serious

6  crime that he comes before a federal court and is

7  facing.  He has such a significant criminal history.

8  His criminal history category is six under any view

9  of his record, and the fact that he is a career

10  offender has been earned by him.

11      He is not a boy.  He is a man.  And he needs to

12  finally come to terms with the fact that he is

13  facing a serious sentence for having committed

14  serious criminal activity.

15      Hopefully he will get drug treatment while he

16  is incarcerated, get some training and will still be

17  a fairly young man when he gets out of prison,

18  whatever this court decides to impose.

19      So, thank you, Judge.  Nothing further.

20      THE COURT:  All right.  Yes, ma'am.

21      All right.  I will give you a chance to

22  respond, Ms Grady.

23      MS GRADY:  Thank you, Judge.  Understanding

24  that tweeny weeny is not an appropriate drug weight,

25  I did pull the lab report which was done which

1  indicates, it is in Government's exhibit bates

2  number 800 and 801, indicates that the weight of the

3  glassine baggy which contained the

4  para-fluorofentanyl was point 0303.  So 300th of a

5  gram, I believe is what that is.  Point zero three.

6  So, that is what I meant by tweeny weeny.

7      THE COURT:  Now, as I understand, the other,

8  collectively, the other 120 bags of fentanyl had a

9  total weight of about four and quarter pounds; is

10  that correct?

11      MS GRADY:  No, that is all the baggies.  That

12  is the issue.  The baggies weighed more than the

13  drugs.  The actual drug weight for the fentanyl was

14  1.34 grams.

15      THE COURT:  Okay.  Thank you for clarifying

16  that.

17      MS GRADY:  Yeah, it was a, it was confusing and

18  that is why we had the lab retest just, because

19  there was tremendous amount of baggies, just not as

20  much drugs.

21      So, the drug weight of the four thousandish

22  glassine baggies was only 122 grams.  So the weight

23  is in the baggies, which, of course, is not illegal.

24  Of course that is not what the guidelines were

25  calculated on.  The guidelines were calculated on

para-fluorofentanyl, and that is calculated
guideline of 130 to 162. So I am saying that -- I
am not -- I am -- we are not in a position to say
whether it is more dangerous or less than. The
United States makes a valid point. But there is
also a valid point that the guidelines as they
calculated are para-fluorofentanyl taking into
account the weight. I just don't like the way they
are put on that and -- because of the statistics
that I showed The Court.

    But the valid para-fluorofentanyl, giving it
all the weight that Congress and the Sentencing
Commission wanted to give it, the sentencing
Guidelines were 130 to 162.

    The United States says that he is man not a
boy, but every one of us is affected and structured
by what happened as a child. He can't ignore that.
So, yes, he is a man, but as a boy started using
drugs. And as a boy turning into a man started
injecting embalming fluid in his brain, in his body.
He is not a well individual. And so the judgment
that comes through to him, and the criminal acts
that he did, the drivings and the things like that,
that is what The Court needs to take into account.
Yes, did his sister 12 years older than him force

1    drugs down his body when he was little?  No.  But

2    was that part of the household, was that part of his

3    foundation?  Yes.

4        Lastly, Judge, she argued about the, his

5    criminal record, if you look at -- I am sure you

6    have -- the criminal violations, probation

7    violations were for drug use.  And The Court

8    recognized, and he was ordered to go into this

9    program and that program to try to help him.  And,

10   no, his substance disorder was so severe with

11   embalming fluid or PCP, which is the drug that was

12   ingested with the embalming fluid, he just couldn't

13   rise to heal himself, being so damaged in his brain.

14       So, the probation violations are numerous, but

15   they are for drug use.  The most time he has ever

16   has served in his entire life is 18 months.

17       Lastly, Judge, the sentencing disparity, the

18   United States said he needs to be sentenced within

19   the career offender guideline because he is career

20   offender.  And I get that.  Except that the United

21   States Sentencing Commission has said the average

22   sentence for non violent career offender is 13

23   months, which means courts are recognizing that.

24   And it would be actually --

25       THE COURT:  Are courts recognizing that, or is

1   the Sentencing Commission recognizing that?

2       MS GRADY:  The Sentencing Commission -- good

3   point, Judge -- the Sentencing Commission is

4   recognizing that the courts are sentencing career

5   offenders --

6       THE COURT:  Okay.

7       MS GRADY:  -- downward.

8       So the inarticulate way I said it.

9       But the fact of the matter is judges all over

10  the country, yes, that would actually, if that is an

11  average, that means that some judges are going, some

12  120 and some going to 180.  Is this a particular

13  situation where maybe Mr. Starkey should receive a

14  sentence that is somewhere between the non career

15  offender guidelines and career offender guidelines?

16  Is there something that would be, something that

17  reflects the seriousness of the offense that

18  punishes him sufficiently and gives him all the

19  programming and training that he needs and reflects

20  the seriousness of the offense?  That would be 180

21  months.  Which would be something that could be

22  sufficient but not greater than necessary, but

23  certainly is not the 262.  That is 22 years.  That

24  is over 15 times what 18 months is.  So, this court

25  has to know that when you do the guidelines, when

1   the courts upwardly vary and they would have to

2   justify the, the -- I go two levels because that is

3   not sufficient.  I go up another two levels because

4   that is not sufficient.  In this case we have no,

5   no, argument between 130 for a non career offender

6   guideline, or 162 plus for a career offender

7   guideline.  There has to be a medium ground for

8   Mr. Starkey that doesn't treat him as a career

9   offender even though The Court has ruled that he is

10  one, because The Court has the overarching duty to

11  sentence him to what is sufficient and not greater

12  than necessary.

13      And I submit anything over 162 or 180 is

14  greater than necessary.  He has not received a

15  sentence that is anything greater than 18 months.

16  And so he has not had the opportunity to learn from

17  a ten-year sentence, from a 12-year sentence, from a

18  15-year sentence.  The Court can't just assume that

19  he is going to be punished sufficiently but not

20  greater than necessary with a 22-year sentence.

21  That is just not right.

22      So lastly, Judge, with Mr. Starkey he has been

23  family sort of up and down the east cost, and I know

24  that Your Honor has previously mentioned that he

25  needs severe drug treatment through the 500 hour

1    program if he is eligible.  It will be a while

2    before he gets there, because has a long sentence he

3    has got to work through the process.

4        He also needs educational and vocational

5    training.  I would submit that the losses that are

6    mentioned in the letters, defendant's exhibits one

7    through four, talk about the losses that he has

8    received.  I think he should receive, if he wants,

9    some mental health counseling to deal with that.

10   Because he is a damaged young man, and he has losses

11   that he has to process.

12       THE COURT:  I will include those in the

13   sentence.  If I omit any of them, don't fail to

14   bring them to my attention.

15       MS GRADY:  Okay.

16       THE COURT:  I have a lot here.  If I miss

17   something, I agree with all of those.  I will make

18   those recommendations.  So if I fail to mention one,

19   please prompt me, okay?

20       MS GRADY:  I will, Judge.

21       Lastly, as I was saying, the last request down

22   the list would be that I know that The Court can

23   recommend where he goes.  He has children in -- a

24   child in Florida and some children in Delaware.  I

25   was hoping that he would be recommended to be either

1   in North Carolina or South Carolina, which would

2   allow easier visits for his family.  He has some

3   folks in North Carolina.  So, we are asking The

4   Court to recommend to the Bureau of Prisons,

5   assuming he qualifies, that he could be placed in a

6   North Carolina or South Carolina institution.

7          THE COURT:  That is a very reasonable request.

8          MS GRADY:  Tank you, Judge.

9          THE COURT:  All right.

10         Before I hear from him, I will rule on the

11  motions that are before me, and then I will hear

12  from him.

13         Counsel has very vigorously argued that the

14  defendant should not be considered as a career

15  offender, or that there should be some form of

16  downward variance in this case because there appears

17  to be over representation of his criminal history.

18  The Court does not believe the record supports those

19  arguments, although the arguments were made in good

20  faith.

21         The record reflects a continuing course of

22  criminal conduct.  Almost unpunctuated.  He has 18

23  criminal history points, thirteen more than are

24  required to be a career offender.  Five felony

25  convictions, two involve drug trafficking.

1        He has extensive history of probation and

2    supervised release violations.  He has not taken

3    advantage any programs previously during his periods

4    of incarceration, and apparently they have not

5    changed his criminal behavior.

6        Prior periods of confinement have had no

7    deterring effect.  He resumes his criminal activity

8    almost immediately after release.  In the immediate

9    case he had a very significant amount of fentanyl.

10   Had lethal dosages, potentially legal dosages that

11   he was placing into the stream of commerce.  So I

12   think he falls squarely within the definition of a

13   career offender, and the motion to treat him

14   otherwise is denied.

15       I will hear from him before I decide what

16   sentence is appropriate in the case.

17       All right, Mr. Starkey, if you will come

18   forward with your attorney, please.

19       I have heard your attorney's presentation, and,

20   as always, she has done a wonderful job doing the

21   best she can to represent you.  The problem is your

22   record is extensive.  And it goes back to your

23   teenage years.  It seems like every time you have

24   been arrested and served time, within a year or so

25   you are back at on the streets doing it again.  That

1   is why you are a career offender.  Throughout your

2   entire life you have been devoted to criminal

3   activity.  That is why you face a substantial

4   sentence today.  But before I decide what sentence

5   is appropriate I want to hear from you.

6       Go right ahead.

7       THE DEFENDANT:  Good morning.

8       THE COURT:  Good morning, sir.

9       THE DEFENDANT:  I apologize to The Courts and

10  my family.  This is probably the worst situation I

11  ever been in in my life, so I am trying to learn

12  from it.

13      THE COURT:  You are finally being held

14  accountable for your conduct, sir.

15      THE DEFENDANT:  Pretty much.

16      I am trying to learn so I don't continue to do

17  that as I progress through this hardship.  I don't

18  have too much to say.  I just want to apologize for

19  being here today.  I am ready to accept my

20  responsibility.

21      THE COURT:  All right.

22      Well, The Court has determined that the U S

23  Sentencing guidelines are properly computed by the

24  U.S. Probation Officer.  They will be considered by

25  The Court as advisory only.

1      I have reviewed the 3553(a) factors which I

2 have recited on the record.  And this Court believes

3 that a sentence that is adequate but not longer than

4 necessary is you be committed to the U.S. Bureau of

5 Prisons for a term of 300 months on count one.  The

6 Court recommends that the defendant participate in

7 any educational or vocational training or substance

8 abuse, or mental health programs, that are available

9 at your institution of designation if you qualify,

10 or if they are available within the Bureau of

11 Prisons.

12      Upon your release from confinement you will be

13 placed on supervised release for a term of five

14 years on count one.  Upon your release you must

15 report to the probation office in the federal

16 judicial district where you are authorized to reside

17 within 72 hours of your release from imprisonment

18 unless the probation officer instructs you to report

19 to a different probation office or within a

20 different time frame.  While on supervision the

21 defendant shall not commit another federal, state or

22 local crime, shall not unlawfully possess a

23 controlled substance, and shall not own, possess or

24 have access to a firearm, ammunition, destructive

25 device, or dangerous weapon.  A dangerous weapon

1     being anything that was designed or was modified for

2     the specific purpose of causing bodily injury or

3     death to another person, such as nunchucks or

4     tasers.

5          The defendant shall comply with the standard

6     conditions of supervised release that are outlined

7     in the presentence report and incorporated in this

8     judgment by reference.

9          I assume you have been over these conditions of

10    supervised release with him.

11         MS GRADY:  I have, Judge.  A while ago, but

12    yes, I have.

13         THE COURT:  Okay, very well.

14         The defendant shall also comply with the

15    following special conditions.  If the defendant

16    tests positive for a controlled substance or shows

17    signs of alcohol abuse, the defendant shall

18    participate in a program approved by the United

19    States Probation Office for substance abuse

20    treatment, which program may include residential

21    treatment and testing to determine whether the

22    defendant has reverted to the use of drugs or

23    alcohol, partial cost to be paid by the defendant.

24    All as directed by the probation officer.

25         The defendant shall participate in a program

1    approved by the United States Probation Office for

2    mental health treatment.  The cost of these programs

3    are to be paid by the defendant as directed by his

4    probation officer.

5        The defendant shall waive all rights of

6    confidentiality regarding substance abuse and mental

7    health treatment in order to allow the release of

8    information to the United States Probation Office,

9    and authorize communication between the probation

10   office and the treatment provider.

11       This Court has considered the defendant's net

12   worth, liquid assets, his life style and financial

13   needs as reflected in the presentence report, his

14   earning potential and the dependents relying on his

15   support.  The Court finds that the defendant is not

16   capable of paying a fine.  As to count one the

17   defendant shall pay a special assessment in the

18   amount of one hundred dollars, which is due and

19   payable immediately; which is due in full

20   immediately and payable during his period of

21   confinement.  Any remaining balance unpaid on the

22   special assessment at the inception of supervised

23   release shall be paid by the defendant in

24   installments of not less than $25 per month until

25   paid in full.  Those payments shall commence 60 days

1    after the defendant's supervised release begins.

2    Payment of any unpaid balance shall become a special

3    condition of his supervised release.  Any forfeiture

4    ordered previously entered in this case will become

5    a part of the judgment in this case.

6        Mr. Starkey, you have a right -- you have

7    waived most all of your rights of appeal in this

8    case, but if there is anything you wish to appeal

9    that appeal must be noted within 14 days.  Should a

10   higher court determine that the U.S. Sentencing

11   Guidelines are improperly calculated in this case

12   this court would find that a non guideline sentence

13   of 300 months would be appropriate based upon the

14   record at hand and the prior criminal history.  You

15   will receive credit for any time you have served

16   awaiting disposition of this case.

17       And I am going to recommend to the Regional

18   Director of the Bureau of Prisons he be designated

19   to a facility close to the North Carolina or South

20   Carolina area.

21       That you be allowed to participate in any

22   program of substance abuse treatment.  And you will

23   receive an opportunity to complete your education.

24   And that you will be receiving any other vocational

25   training available at your level of institution.

1      I am also going to recommend to the Director of

2  the Bureau Prisons that you be allowed to

3  participate in any mental health programs that may

4  be available at your institution of designation.

5      As I mentioned to you you will receive credit

6  for any time you have served awaiting disposition of

7  this case.

8      Anything further today, Ms Grady?

9      MS GRADY:  Just to note, Judge, I know most

10  folks do waive the right to appeal.  Mr. Starkey

11  didn't have a plea agreement, so just so the record

12  is clear.

13      THE COURT:  I'm sorry.  I take that back.

14      MS GRADY:  It's 95 percent of the folks do

15  waive, so I understand The Court's issue.

16      THE COURT:  That is fine.

17      Yes, ma'am?

18      MS MASTANDREA:  The United States moves to

19  dismiss the original indictment in this case.

20      THE COURT:  That motion is granted.  The

21  original indictment will be dismissed.

22      MS GRADY:  Thank you, Judge.

23      THE COURT:  All right.

24      If there is nothing further, Mr. Starkey, I

25  wish you the very best of luck, sir.  You will still

1  be a young man, have a chance to get your life

2  turned around.  But, you know, you are not getting

3  any younger.  If you want to make something of

4  yourself, see yourself be successful, spend time

5  with your family, you have to correct your behavior

6  and get a better grip on good values in life.

7          You are remanded to the custody of the U.S.

8  Marshal.

9          The Court will stand in recess.

10

11                    HEARING ADJOURNED

12

13      THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT.

14

15                    GILBERT FRANK HALASZ

16                    Official Court Reporter

17

18

19

20

21

22

23

24

25